IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:22-CR-117-TAV-JEM |
| | ) | |
| WIGBERT BANDIE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or recommendation as appropriate. Defendant Wigbert Bandie and two named codefendants are charged with conspiracy to commit wire fraud, two counts of wire fraud, two counts of mail fraud, money laundering, and conspiracy to commit money laundering [Doc. 11]. Defendant Bandie moves for a bill of particulars specifying the overt acts he allegedly committed in furtherance of the two conspiracies and the evidence the Government will use to prove certain allegations in the Indictment [Doc. 43 pp. 2–4]. He argues that a bill of particulars is necessary for him to prepare for trial and to protect against future double jeopardy violations [*Id*. at 2]. The Government responds in opposition, asserting that the Indictment and detailed discovery adequately protect Defendant Bandie's double jeopardy rights and permit him to prepare for trial [Doc. 44].

For the reasons discussed below, a bill of particulars is not necessary in this case, and Defendant Bandie's Motion for a Bill of Particulars [**Doc. 43**] is **DENIED**.

## I. BACKGROUND

On November 30, 2022, law enforcement arrested Khadijah Adams, at an international airport as she prepared to board a plane for Accra, Ghana, on a Criminal Complaint charging

wire fraud and money laundering conspiracies and the substantive offenses of wire fraud, mail fraud, and money laundering [Doc. 3 p. 1; *see also* Doc. 8 p. 2]. The supporting affidavit alleges that Adams, a resident of New Jersey, engaged in financial transactions involving the proceeds of unlawful activity relating to R.C., a resident of Knoxville, Tennessee [Doc. 3-1 ¶¶ 5–7]. According to the affidavit, Adams and two unnamed coconspirators engaged in a scheme to obtain money from R.C. by enticing R.C. through social media to become romantically involved with a fictitious heiress, who offered R.C. forty percent of her inheritance if he would pay to ship the gold to America [*Id.* ¶ 8]. Coconspirator 1 posed as the heiress and coconspirator 2 posed as an employee of a fake shipping company [*Id.* ¶¶ 9–12, 15–18]. R.C. was directed to send shipping fees to Adams, who accepted the funds knowing they were from a fraudulent scheme [*Id.* ¶¶ 19–21].

On December 7, 2022, the Grand Jury for the Eastern District of Tennessee returned an Indictment charging Adams, along with Defendants Bandie and Mubarak Braimah, both residents of Accra, Ghana [Doc. 11 ¶¶ 1–2, 4]. The Indictment alleges that from June 22, 2019, through December 31, 2019, the three Defendants conspired to commit wire fraud through a scheme to obtain money by false pretenses (Count One) [*Id.* ¶ 8] and to conduct a financial transaction involving the proceeds of wire fraud knowing the transaction was designed to disguise the ownership of the proceeds of unlawful activity (Count Seven) [*Id.* ¶ 29]. The object of the wire fraud conspiracy was "to obtain money from victims by engaging in fraudulent romance scams" [*Id.* ¶ 9]. Defendants Bandie and Braimah are alleged to have targeted the victims of the romance scams through social media and "impersonated individuals living overseas in search of a relationship" [*Id.* ¶ 10]. Once they gained the victims' trust, Defendants Bandie and Braimah sought money from the victims to ship gold to the United States in

exchange for sharing profits from the gold with the victims [*Id.*]. The victims were directed to send money for shipping fees to Defendant Adams [*Id.*]. None of the victims received profits or gold from the Defendants [*Id.*].

The Indictment alleges that Defendant Bandie created an email account in the name of "Kimberly McIntosh" and posing as Kimberly McIntosh, "an heiress to a sum of gold bars located in Singapore," communicated with R.C. on social media [*Id.* ¶¶ 11–13]. Defendant Bandie, posing as Kimberly McIntosh, offered R.C. a share of McIntosh's inheritance if R.C. would pay the fees to ship the gold from Singapore to the United States [*Id.* ¶ 14]. Defendant Bandie "created false documents, including a memorandum of understanding between BANDIE and R.C. for a 40% share of the gold inheritance in exchange for R.C.'s payment of shipping fees" [*Id.* ¶ 15]. R.C. accepted this offer, and both R.C. and Defendant Bandie "signed the memorandum of understanding" [*Id.* ¶ 16].

According to the Indictment, Defendant Braimah "posed as a liaison between Safety Shippers[, "a company that purported to be an international shipping company,"] and R.C. to facilitate the gold shipment" and "defraud[ed] R.C. into mailing cash and electronically transferring funds to [Defendant Adams] under the false pretense that the money was to pay fees for the afore-described gold shipment" [*Id.* ¶¶ 20–21]. The Indictment details a series of payments from R.C. on July 12, 15, and 25, 2019, and August 7, 2019, totaling $73,550 [*Id.* ¶¶ 25–26]. It also alleges that Defendant Adams wired $6,800 from her bank account in New Jersey to Defendant Brimah's bank account in Accra, Ghana, on July 15, 2019 [*Id.* ¶ 28].

Defendant Bandie was arrested on November 23, 2023, at an international airport in New York, arriving from Doha, Qatar [Doc. 30 p. 2]. He was arraigned on the Indictment on November 27, 2023 [Doc. 34].

Case 3:22-cr-00117-TAV-JEM Document 45 Filed 02/13/24 Page 3 of 8 PageID #: 228

## II. ANALYSIS

Defendant Bandie asks the Court to order the Government to provide a bill of particulars specifying the following: (1) Defendant Bandie's acts that show he willfully conspired to commit the offenses; (2) the factual basis for the allegation that he created false documents, proof of the existence of the memorandum of understanding, and proof that Defendant Bandie created and signed it; (3) the evidence showing Defendant Bandie created or used an email account using the name of Kimberly McIntosh; (4) any overt acts by Defendant Bandie in furtherance of the alleged fraudulent wire or cash transfers between R.C. and Defendant Adams alleged in Counts 2–5; and (5) any overt acts by Defendant Bandie in furtherance of the money laundering conspiracy in Count 7 [Doc. 43 pp. 2–4]. Defendant Bandie argues these particulars are necessary for him to prepare for trial, to avoid surprise, and to prevent being twice convicted for the same offense [*Id*. at 2]. He asserts that even after reviewing the discovery, "numerous uncertainties regarding key aspects of the allegations" exist preventing him from preparing for trial without the requested particularization [*Id*. at 1]. Defendant Bandie contends that the purpose of a bill of particulars is to provide information beyond the minimum facts necessary to provide notice of the charges and that in close cases, the Court should order disclosure [*Id*.].

In response, the Government asserts that the Indictment and the provided discovery enable Defendant Bandie to prepare his defense, avoid unfair surprise at trial, and plead a bar to a double jeopardy violation [Doc. 44 pp. 1, 4]. It claims that the Indictment "allege[s] the nature of the scheme, the conspiracy and its objects, the participants and their roles in the scheme, the overt acts in furtherance of the conspiracy, the identity of the victim and amounts of funds illegally taken from the victim, and specific false and fraudulent representations made to him" [*Id*. at 3]. The Indictment further includes "specific instances of fraudulent acts, specific amounts

of money which were received by wire transfer, specific transfers of funds by wire on specific dates, and specific amounts of cash sent through the mail on specific dates" [*Id.*]. Moreover, the Government contends Counts 2 through 6 "specif[y] the date, the amount of money, the alleged violation of law, and . . . the mode of financial transfer" [*Id.*]. It maintains that additional details such as bank statements and postal tracking numbers are contained in the discovery, which includes "search warrant affidavits, electronic evidence, including but not limited to text messages, photographs, results of email and iCloud storage analysis, United States Post Office receipts, Federal Express tracking numbers, bank records, audio recordings, and witness statements" [*Id.* at 1, 3]. Additionally, the Government states it will provide additional information by disclosing its trial exhibits and any Jencks Act materials [*Id.* at 4]. The Government argues that the allegations in the Indictment and the detailed discovery reveal Defendant Bandie's precise involvement in the charged conspiracies, allow him to prepare for trial, and protect his double jeopardy rights [*Id.*].

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly.'" *Hamling*, 418 U.S. at 117 (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)); *Landham*, 251 F.3d at 1079. The statutory language "must be accompanied with such a statement of the facts and

circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117–18 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)); *Landham*, 251 F.3d at 1079.

Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the government to file a bill of particulars" and that "[t]he government may amend a bill of particulars subject to such conditions as justice requires." "A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993) (citations omitted). The granting of a bill of particulars is within the Court's discretion. *See id.* The level of detail in the indictment can be a basis for denying the motion for a bill of particulars. *Id.* In addition, "'a defendant is not entitled to a bill of particulars with respect to information which is available through other sources.'" *United States v. Higdon*, 68 F. Supp. 3d 807, 811 (E.D. Tenn. 2014) (quoting *United States v. Paulino*, 935 F.2d 739, 750 (6th Cir. 1991), *superseded on other grounds by statute*, *United States v. Caseslorente*, 220 F.3d 727 (6th Cir. 2000)).

Defendant Bandie asks for particularization of his overt acts in furtherance of the charged offenses and of the evidence the Government will use to prove the factual allegations in the Indictment. The Court agrees with the Government that the Indictment is sufficiently specific to inform Defendant Bandie of the nature of the charge he faces and to permit him to prepare for trial. The Indictment describes the alleged fraudulent scheme and the roles of the three Defendants. It states Defendant Bandie's overt acts in furtherance of the scheme. The Government has also detailed that much of the requested information is available from the

provided discovery. A bill of particulars is not required when the indictment is detailed and bolstered by discovery. *See United States v. Martin*, No. 3:07-CR-51, 2008 WL 152900, at *5–6 (E.D. Tenn. Jan. 14, 2008) (holding "the indictment and numerous materials underlying the indictment are more than sufficient to prevent surprise and allow defendants to prepare their defense").

Nor is Defendant Bandie entitled to the Government's "evidence" and "proof," which he requests [Doc. 43 p. 3]. "The bill of particulars is not intended as a means of learning the government's evidence and theories." *United States v. Musick*, 291 F. App'x 706, 724 (6th Cir. 2008) (citation and quotation marks omitted). Nor is it "meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *Salisbury*, 983 F.2d at 1375 (citations omitted); *see, e.g.*, *United States v. Pullum*, No. 5:15-CR-70-DCR-REW, 2016 WL 11677773, at *3 (E.D. Ky. Oct. 11, 2016) ("To the extent Pullum seeks any and all statements and/or events upon which the prosecution intends to rely to prove that the conspiracy existed, a bill of particulars is specifically not a tool to permit a defendant to discover all the overt acts that might be proven at trial, or to learn the details of the government's evidence." (cleaned up and citations omitted)).

In sum, a bill of particulars is not necessary here because the Indictment and discovery provide sufficient information to permit Defendant Bandie to craft a defense, avoid surprise, and plead a bar to a future double jeopardy violation. "[W]ere this court to hold otherwise, it would be condoning the 'detailed disclosure of all evidence held by the government' a purpose for which the bill of particulars is not meant to serve and a right to which defendants have no claim." *Martin*, 2008 WL 152900, at *6.

## III. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant Bandie's Motion for a Bill of Particulars [**Doc. 43**].

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge